## Sprowls v. Ealy et al.

378

*R. W. Knox,* for plaintiff.

*Burnside, Moninger & Burnside,* for defendants.

GIBSON, J., February 16, 1935.—On behalf of the defendant and garnishee a writ of certiorari was issued on May 28, 1934, to which the justice of the peace made return on June 4, 1934. The defendant and the garnishee claimed that the transcript filed with the return did not correspond with a transcript previously given to them, and that there was a diminution of record. Following this, a hearing was held September 8, 1934, at which testimony was taken for that purpose. An examination of the testimony does not show that there is any diminution of the record as shown by the transcript filed with the return. Among the papers attached to the return we do not find the original summons and the original return of the constable thereon. It is set forth in the transcript that the summons was issued February 1, 1934, returnable to February 9, 1934. It also sets forth that this summons was served on the defendant by handing him an attested copy thereof in East Finley Township, Washington County, Pa., at his dwelling house; that the hearing was held on February 9, 1934; that the plaintiff was sworn and that he made certain claims; that defendant did not appear and judgment was entered in favor of the

plaintiff and against Wilden Ealy, the defendant, in the sum of $98.60, to which is added the words "by default". The fact that the transcript sets forth that the plaintiff was sworn and testified, shows that the judgment could not have been in default of an appearance of defendant. To this portion of the transcript certain exceptions have been filed, attacking its regularity.

It has been held in numerous cases that a writ of certiorari brings up for review nothing but the record and every presumption consistent with the record is made in favor of the regularity of the proceeding: Ristau et ux. v. Crew Levick Co., 109 Pa. Superior Ct. 357; Gibbs & Co. v. Alberti, 4 Yeates 373; Bradley v. Flowers, 4 Yeates 436; Cope v. Buck, 3 Lanc. 353; Evans v. Brobst, 5 Dist. R. 30; Kerr v. Lowry, 2 Dist. R. 371; Cooke v. Shoemaker, 17 Pa. C. C. 641; Guth v. Stein, 29 Dist R. 669; Snyder v. Carfrey, 54 Pa. 90.

In the last case cited the Supreme Court said (p. 93) :

"Very few aldermen and justices of the peace can make up records upon penal statutes which can withstand the criticisms of a certiorari, but in committing the rights of landlords and tenants to the unaided judgment of such a magistracy, the legislature meant that superior courts should exact no unattainable precision of procedure, but only such substantial compliance with the letter and spirit of the statute as would generally be within the competence of the magistrates."

Considering the original proceeding here, it appears the summons was returnable within the proper time, it was served on the defendant, the hearing was held on the day appointed, the plaintiff was sworn, and the judgment was entered after the hearing. It is complained that the return of the constable, as set forth in the transcript, does not show upon what date service was made. This service was required to be made at least four days before the time of hearing (Act of March 20, 1810, 5 Sm. L. 161, sec. 2, 42 PS §422). On the hearing held with reference to the diminution of record the defendant of-

fered no evidence that this was not done; and under the authorities above referred to, we should presume that the service was made at the proper time, notwithstanding the failure to insert the date of such service.

It will be noted that judgment was entered on February 9, 1934. The certiorari was not issued until May 28, 1934, more than 20 days thereafter. Under the Act of March 20, 1810, 5 Sm. L. 161, sec. 21, 42 PS §951, it is provided that no judgment shall be set aside in pursuance of a writ of certiorari unless the same is issued within 20 days after judgment was rendered. Therefore this writ comes too late, where its purpose is to set aside the original judgment. We recognize that there are a large number of cases holding that this limitation of 20 days does not apply where jurisdiction is involved, or where the judgment is void ab initio by reason of lack of jurisdiction of the parties or the subject matter being apparent on the face of the record, or where there are no witnesses sworn, no service upon the defendant, and in such like matters. In this case the record affirmatively shows that there was service within the county, and that the defendant had actual notice of the proceedings and the time at which the hearing would be held and judgment might be rendered; that the magistrate had jurisdiction of the proceeding; and it was the duty of the defendant, if he was interested, to ascertain the judgment entered and cause his writ of certiorari to be issued within 20 days after the entry of such judgment. We therefore hold that the judgment in favor of Harry V. Sprowls against Wilden Ealy, entered by the justice of the peace on February 9, 1934, for $98.60, is a valid judgment, and the exceptions, insofar as they refer to this judgment, should be dismissed.

The defendant and garnishee complain that the transcript filed with the return of the certiorari does not correspond with the transcript furnished to them at their request before the certiorari was issued. This case must be decided upon the record as returned by the justice, although it may not correspond with the transcript fur-

nished before the writ was issued, since it is the duty of the justice to make his record a true statement of the proceedings before him, and he may amend his record to correspond to the facts even after he has given a transcript to the parties: Moore v. Messersmith, 12 Pa. C. C. 575; Ristau et ux. v. Crew Levick Co., 109 Pa. Superior Ct. 357.

The proceeding continues further, as appears by the transcript, in that execution was issued on March 5, 1934, and on the following day was returned "No goods". An attachment was issued March 15, 1934, returnable to March 21, 1934. The return of the constable shows service on the same day the writ issued, on P. W. Kimmel, attaching a note of Wilden Ealy, the defendant, in the hands of P. W. Kimmel. Here the proceeding, so far as the transcript is concerned, ends. Attached to the return of the certiorari is the original attachment and what appears to be an execution issued against the garnishee, and another execution issued May 16, 1934, under which certain property was levied upon, which apparently is the property of the garnishee. It does not appear, either on the transcript or the various papers attached, that service of the attachment was made on Wilden Ealy, the defendant, or that any interrogatories were ever served on the garnishee or answered by him, the portion of the attachment writ having reference to interrogatories being entirely blank. The exceptions also extend to the attachment proceeding.

The transcript as returned shows only the issuance of the attachment and the service thereof, and in considering the exceptions we will confine ourselves to those matters which appear on the transcript, which fall into two classes, viz.: (1) As to the sufficiency of the attachment issued; and (2) the service thereof.

The Act of April 15, 1845, P. L. 459, extends the jurisdiction of aldermen to the issuing, service, trial, judgment, and execution of process required in execution attachments, this jurisdiction having previously been given

to courts of common pleas by the Act of June 16, 1836, P. L. 755, sec. 35, 12 PS §2265. Section 3 of the Act of 1845, as amended by the Act of June 29, 1923, P. L. 934, regulated the issuance and service of the writ of attachment and provided that the writ of attachment might issue returnable not less than four nor more than eight days, and should be served in the manner provided for the service of a summons upon the debtor or any other person having property of the defendant in his hands made liable to the attachment, "and on or before the return day of said writ, the plaintiff may file with the magistrate interrogatories in writing, addressed to the person summoned as garnishee, in regard to the property and effects of the defendant alleged to be in his hands at the time of the service of said writ; a copy of the same, with a rule to answer, shall be served upon said garnishee personally, to answer under oath or affirmation all such interrogatories as the magistrate shall deem proper and pertinent, within eight days after the same shall be served." While the transcript shows that the writ was issued returnable within the required time, it says nothing whatever of any interrogatories filed by the plaintiff or any service thereof. Notwithstanding this, the transcript sets forth: "Defendants in default." Also, the original attachment accompanying the return of the certiorari shows that portion thereof having reference to the rule and the interrogatories to be blank, and we believe we correctly assume that no interrogatories were filed, no rule to answer was issued, and neither was served on the garnishee. Consequently there could be no default of the garnishee and no judgment could be entered against him until such interrogatories had been filed and rule to answer them issued, and both served on the garnishee, and he had neglected to answer the interrogatories within the eight days provided by section 4 of the Act of 1845. The provisions of the act regulating attachments have not been substantially followed, and as

a result no judgment could be entered upon the attachment.

As to the service of the attachment, it appears by the transcript that service was made "personally on said P. W. Kimmel". There is no service whatever shown on the defendant, but only on the garnishee. The Act of 1845, sec. 3, provides that the writ of attachment shall be served as a summons upon the debtor, depository, bailee, pawnee, etc. However, in the body of this section, with reference to the interrogatories, they are to be "in regard to the property and effects of the defendant alleged to be in his hands"; and it would appear that the "debtor" upon whom service is to be made under this section is the debtor to the defendant, and nowhere in this section is there an express requirement that the attachment shall be served on the defendant. The Act of 1836, authorizing the issuance of attachments by the court of common pleas (which power to a limited extent was granted to aldermen and justices of the peace by the Act of 1845), required that the execution attachment be served "upon the defendant in such judgment". The jurisdiction of aldermen and justices of the peace having been extended by a reference to the Act of 1836 and particularly to sections 35 and 36, it has been held that the requirement of service on the defendant was a requirement extended to actions before aldermen and justices of the peace, notwithstanding that by the Act of 1845 they were not expressly required to serve the writ on the defendant.

Also, in the orderly administration of justice, it is proper that the defendant have notice of each step in the proceeding, where his property has been seized, so that he may be heard and given an opportunity to pay the judgment himself, or perhaps show that it has already been paid or is not properly collectible. That it was intended that he should have notice and an opportunity to defend is apparent from the fact that section 6 of the Act of 1845 gives him the right to appeal from the judg-

ment of the justice, and he could not well exercise this right if he had no notice of the pendency of the attachment proceedings. The practice has long been recognized that the defendant or real debtor in an attachment proceeding must be served: Binns' Justice (13th ed.), 141; Freeland v. Elsworth et al., 3 Luz. L. R. 45; Evans, Garnishee, v. Zane, 13 Montg. 47; Henaughan v. Golden, 4 Luz. L. R. Rep. 195; Witich et al. v. Michael, 4 Luz. L. R. Rep. 144. In accordance with these decisions, it appearing that no service was made upon the defendant, it necessarily follows that the service of the attachment was not sufficient and any attempted judgment entered upon the attachment and any execution thereon are void.

And now, February 16, 1935, the judgment entered by G. W. Tilton, justice of the peace, in favor of Harry V. Sprowls, plaintiff, and against Wilden Ealy, defendant, on February 9, 1934, in the sum of $98.60, is sustained, and exceptions to so much of the record as refers to said judgment are hereby overruled; and exceptions to the service of the writ of attachment issued by the said justice on March 15, 1934, and as to any judgment or subsequent proceedings thereon, are hereby sustained, and the proceedings subsequent to the issuance of said writ of attachment are hereby set aside.

BROWNSON, P. J., concurring. — I agree fully with what has been said by Judge Gibson concerning the attachment execution, and with the conclusion arrived at upon that subject. I shall discuss only the matter of the judgment entered by the justice of the peace against Wilden Ealy.

I regard this judgment as erroneous, and think it should be reversed if the certiorari were taken out in time to authorize the court to review it.

1. The hearing in pursuance of which the judgment was entered was held on the return day of the summons. Under the provisions of the Act of March 20, 1810, 5 Sm. L. 161, such a hearing should not be held within four

days after the service. The record in this case sets forth a personal service, but does not give the date thereof. A summons may be served at any time before the return day, and a service so made will be sufficient to give jurisdiction over the defendant and authorize the court or magistrate to dispose of the case: Heberton v. Stockton, 2 Miles 164; Boyd v. Serrill, 2 Clark 327; but a magistrate's hearing of a case is required to be held not less than four days after the service is made, and it does not appear that this requirement was complied with. The docket entries indicate that the return of service was made at least as early as the return day, but I do not think we can presume that the writ was served earlier than the preceding day; and if it were not, the hearing should have been postponed to a later date. I believe that the absence of anything to show the date of service renders the judgment prima facie irregular.

2. This judgment was rendered in default of an appearance by the defendant. The record of the justice explicitly so declares, and the fact that testimony in support of the plaintiff's claim was heard does not contradict and is not in any way inconsistent with this declaration; for the law has uniformly been interpreted as requiring (except when an affidavit of claim has been served on the defendant under the Act of July 7, 1879, P. L. 194) that a judgment by default, in pursuance of a summons in the form in which this one was issued, shall be preceded by a hearing at which evidence defining and supporting the claim of the plaintiff is presented: See the cases collected in 10 P. & L. Dig. Dec., col. 17286, and there are later cases to the same effect. This being, then, a judgment by default, it was subject to the requirement in section 6 of the Act of 1810, that before entering such a judgment the justice shall receive "due proof, by oath or affirmation, of the service of the summons" and the cases generally hold that, to render such a judgment regular, such proof must be taken, and the taking thereof must appear of record: Bell v. Borough of

Oakdale, 17 Pa. C. C. 298; Garey & Pender v. Redmond, 27 Pa. C. C. 460; Streuber v. McFayden, 30 Pa. C. C. 423; North Charleroi Borough v. Mountser, 9 Justice L. R. 245; Anstine v. Torbet, 23 York 115; Hazelton Overall Co. v. Guzinsky, 6 Schuyl. L. R. 318; Reuban v. Davis et al., 24 York 137; Hostetter v. Stoner, 25 Lanc. 142; Byerly v. Consolidated Real Estate Co., 13 Dist. R. 746; National Decorating Co. v. The Scull Co., 12 D. & C. 317. According to these cases, the fact that all of a constable's official acts are done under his oath of office does not meet this requirement of the statute: it intends that the entry of a default judgment shall be preceded by a special and specific oath regarding the service in the particular case. In this instance, the making of such proof does not appear, and therefore the judgment appears, at least prima facie, to be irregular.

The question then arises, whether this judgment can be reviewed and set aside upon the present writ of certiorari, which was not taken out until more than three months after the date of the judgment. A certiorari may properly bring up for review subsequent acts of the justice, such as the awarding and issuing of execution, or proceedings upon an attachment execution, although issued too late to authorize a review of the judgment itself: Winters v. Homsher et al., 8 Lanc. 137; see also Downer et al. v. Campbell, 14 Wash. Co. 157, 160.

The Act of 1810, supra, provides in section 21 that "no judgment [of a justice of the peace] shall be set aside in pursuance of a writ of certiorari, unless the same is issued within twenty days after judgment was rendered". This limitation has been held to have no application where the justice had no jurisdiction of the subject-matter of the action. In such event not only the judgment but every step taken in the case by the justice is an absolute nullity, and consent cannot give jurisdiction of that kind; wherefore, the judgment being absolutely void, a court may at any time so declare. But when, as is the case here, the justice has unquestionable jurisdic-

tion of the cause and form of action, irregularities in procedure (even irregularities in the manner of making service) are capable of being waived, and often are waived by acquiescence or neglect. Accordingly, while the courts have given a liberal, or we may say an equitable, interpretation to this statutory limitation, in that it has been held that in many cases, wherein defects and deficiencies in a record render the judgment so irregular as to be prima facie void, certiorari may be issued after 20 days, it has also been laid down that the defendant must, in such cases, sue out the writ within a reasonable time: Bertz v. Troast, 17 Lanc. 169; and this reasonable time has generally been defined as being within 20 days after knowledge that the judgment has been entered: See, for example, Schwartz Brothers v. Adams Express Co., 75 Pa. Superior Ct. 402; Quigley v. Miners Mills Borough, 47 Pa. C. C. 438; Perotti v. P. R. R. Co., 29 Dist. R. 276.

It has been held, further, that when a defendant seeks to have the benefit of this equitable interpretation of the statute, the burden is upon him to show when he first ascertained that the judgment had been entered: Quartz v. Oakmont Motor Boat Co., 68 Pitts. 248; Dixon v. S. Hamilton & Co., 80 Pitts. 530. This Mr. Ealy has not attempted to do. The fact that, within a month after the entry of the judgment, a fi. fa. was issued upon it and returned "No goods", would at least suggest the probability or possibility of his having had actual knowledge of the judgment at that time, which was more than $2\frac{1}{2}$ months before the certiorari issued; but if that fact is to be disregarded, as not being, by itself, legal or sufficient evidence to prove knowledge, then there is a lack of evidence to show when he first acquired such knowledge.

In applying this rule of equitable interpretation, the question of laches is to be considered: Schwartz Brothers v. Adams Express Co., 75 Pa. Superior Ct. 402; Wasser v. Brown, 1 Luz. L. R. Rep. 341. When the defendant

had actual knowledge of the pendency of the action, as this defendant had, having been personally served, he was put on inquiry; and if in fact he was ignorant, until shortly before the certiorari was issued, of the entry of a judgment in that action, this would be merely the result of his negligently refraining for more than three months from inquiry as to what had become of the action. A man can take no benefit from his ignorance when he has been wilfully ignorant.

Without stopping to consider whether the failure of the record to show that the date of service was four days prior to the hearing, and its failure to show that proof of service was made on oath, had the effect of rendering the entry of judgment merely a procedural error such as can be reviewed only upon a certiorari issued strictly within the limitation period of 20 days, or whether, on the other hand, these failures constituted such defects or deficiencies in the record as to render the judgment reviewable on a writ issued after the 20 days, my conclusion is that in either event the defendant's unexcused and unexplained delay to act for so long a period as the facts of this case exhibit was unreasonable, amounted to laches; and operates as an obstacle to his having this judgment now reviewed and set aside.

I concur in the refusal to set aside the judgment against Wilden Ealy, as well as in the setting aside of all proceedings subsequent to the issuing of the attachment execution.